IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DR. JAY BERGER,

    Plaintiff,

v.

DORN M. LAWRENCE,

    Defendant.

CIVIL ACTION FILE NO.:
1:13-CV-03251-HLM

## ORDER

This case is before the Court on Defendant's Motion for Summary Judgment [46] and on Plaintiff's Motion for Summary Judgment [55].

## I.   Background

### A.   Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and

AO 72A
(Rev.8/8
2)

all factual inferences in the light most favorable to the party opposing the motion, the Court provides the following statement of facts. <u>Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.</u>, 496 F.3d 1231, 1241 (11th Cir. 2007). This statement does not represent actual findings of fact. <u>In re Celotex Corp.</u>, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the Court has provided the statement simply to place the Court's legal analysis in the context of this particular case or controversy.

At approximately 10:00 or 10:30 p.m. on August 25, 2012, Plaintiff met with a friend, Shani Hise, at his apartment. (Pl.'s Statement Material Facts Supp. Pl.'s Mot. Summ. J. ("PSMF") (Docket Entry No. 55-2) ¶ 1; Def.'s Resp. PSMF ("DRPSMF") (Docket Entry No. 68-1) ¶ 1.)

2

After watching television for approximately one hour, Plaintiff and Ms. Hise decided to go out, and they took a taxi to the Doll House, a club located on Cheshire Bridge Road in Atlanta, Georgia. (PSMF ¶ 2; DRPSMF ¶ 2; Dep. of Dorn Lawrence Dated Nov. 18, 2013 ("Lawrence Dep. II") (Docket Entry No. 50) at 45-46 (stating that Defendant observed Ms. Hise sitting on the ground in front of the Doll House on Cheshire Bridge Road).)  Plaintiff and Ms. Hise arrived at the Doll House at approximately midnight.  (PSMF ¶ 2; DRPSMF ¶ 2.)

Plaintiff and Ms. Hise remained at the Doll House for approximately two and a half hours before deciding to leave. (PSMF ¶ 3; DRPSMF ¶ 3.) According to Plaintiff, Ms. Hise appeared to have become intoxicated.  (PSMF ¶ 3;

3

DRPSMF ¶ 3.)   Plaintiff contends that he was not intoxicated and that he "had roughly around two drinks over the course of the two or so hours" that he and Ms. Hise were at the Doll House.  (Aff. of Pl. (Docket Entry No. 56) ¶ 7; Dep. of Pl. (Docket Entry No. 62) at 11, 26.)   In any event, Plaintiff testified that the bar bill for himself and Ms. Hise was approximately $200.00.  (Pl. Dep. at 13.)

Plaintiff and Ms. Hise walked toward the street so that Plaintiff could hail a cab.  (PSMF ¶ 4; DRPSMF ¶ 4.)  Ms. Hise was not stable on her feet, and Plaintiff helped her to the ground near the roadway.  (PSMF ¶ 5; DRPSMF ¶ 5.)

Plaintiff was able to hail a cab.  (PSMF ¶ 6; DRPSMF ¶ 6.)  The cab pulled up alongside the curb.  (PSMF ¶ 7; DRPSMF ¶ 7.) Defendant, who was on routine patrol, drove

4

up as Plaintiff turned toward Ms. Hise to take her to the cab. (PSMF ¶ 8; DRPSMF ¶ 8.)  Defendant pulled off Cheshire Bridge Road into the Doll House's driveway.  (PSMF ¶ 13; DRPSMF ¶ 13.)

Defendant saw Plaintiff alongside Ms. Hise, who was sitting on the ground.  (PSMF ¶ 9; DRPSMF ¶ 9.) According to Defendant, Plaintiff was standing over Ms. Hise, who was sitting on the grass, pointing his finger in her face and gesturing. (Lawrence Dep. II at 45, 47-48, 56-57.) Defendant contends that, based on his experience, it appeared that Plaintiff and Ms. Hise had either had a fight or were having a fight. (Id. at 47-48.) Admittedly, Defendant knew nothing about what had transpired before he saw Plaintiff and Ms. Hise and pulled into the Doll House's

5

driveway.  (PSMF ¶ 11; DRPSMF ¶ 11.)  Plaintiff contends that he did not have his fingers in Ms. Hise's face and he was not waving his arms around.  (Pl. Aff. ¶ 10.)

Defendant stopped to question Plaintiff and Ms. Hise. (Def.'s Statement Material Facts ("DSMF") (Docket Entry No. 55-2) ¶ 4; Pl.'s Resp. DSMF ("PSMF") (Docket Entry No. 65) ¶ 4.) Both Plaintiff and Ms. Hise had been drinking. (DSMF ¶ 5; PRDSMF ¶ 5.)

When Defendant got out of his car and began to speak to Plaintiff and Ms. Hise, several individuals who appeared to have come out of the Doll House got into the cab, and the cab drove away.  (PSMF ¶ 14; DRPSMF ¶ 14.)  Defendant asked Plaintiff what was going on, and Plaintiff responded by saying something like "how are you doing."  (PSMF ¶ 15;

6

DRPSMF ¶ 15.)  Defendant could smell alcohol on Plaintiff. (DSMF ¶ 6; PRDSMF ¶ 6.)[1]

Plaintiff stated that he was trying to hail a cab to get home.  (PSMF ¶ 16; DRPSMF ¶ 16.)  After Defendant asked something such as "what's going on with her," Plaintiff stated that Ms. Hise had "too much to drink." (PSMF ¶ 17; DRPSMF ¶ 17.)

Defendant went to Ms. Hise and began to ask her questions.  (PSMF ¶ 18; DRPSMF ¶ 18.)  According to Defendant, Ms. Hise was reluctant or hesitant to answer his questions, and Plaintiff kept answering for Ms. Hise every time Defendant tried to ask a question.  (Lawrence Dep. II

---

[1]According to a supervising officer who spoke with Plaintiff after his arrest, Plaintiff appeared visibly intoxicated, with glassy eyes and disheveled clothes.  (Dep. of Thomas Lee Padgett (Docket Entry No. 51) at 28-29.)

AO 72A
(Rev.8/8

at 53-54.)  Defendant contends that he wanted Ms. Hise to answer for herself so that he could determine whether Ms. Hise was hurt or if a domestic violence incident or a fight had occurred.  (Id. at 53-54.)  Defendant then told Plaintiff something to the effect of "let me ask her the questions and let her answer."  (PSMF ¶ 19; DRPSMF ¶ 19.)  Defendant also told Plaintiff that he was not talking to him.  (PSMF ¶ 20; DRPSMF ¶ 20.)  Once Defendant told Plaintiff to stop, Plaintiff did not interrupt him again.  (PSMF ¶ 21; DRPSMF ¶ 21.)

Defendant finished questioning Plaintiff and Ms. Hise, and began to walk back to his car.  (PSMF ¶ 22; DRPSMF ¶ 22.)  At that time, according to Defendant, Plaintiff and Ms. Hise were free to go and Defendant had no citation to

8

write concerning their conduct.  (PSMF ¶ 23; DRPSMF ¶ 23.)

According to Plaintiff, as Defendant walked to his car, Plaintiff said, "Are you done talking to my girlfriend," and Defendant responded, "yes." (Pl. Aff. ¶ 19; Pl. Dep. at 18.) As Defendant walked to his car, Plaintiff also said something such as "are you finished" or "are you done?" (PSMF ¶ 24; DRPSMF ¶ 24.)

Defendant testified that Plaintiff yelled at him in a defiant manner, wanting to know if Defendant was done. (Lawrence Dep. II at 55.)  Defendant stated that Plaintiff's comment was more of a demanding one, based on Plaintiff's body language, but admits that Plaintiff did not make gestures with his hands.  (Id. at 61-62.)

9

AO 72A
(Rev.8/8
2)

Plaintiff remained standing in the same place as he spoke to Defendant.  (PSMF ¶ 26; DRPSMF ¶ 26.) In any event, Defendant responded, "Yes," and continued to his car, stating, "You're free to go."  (PSMF ¶ 27; DRPSMF ¶ 27; DSMF ¶ 9; PRDSMF ¶ 9.)  Defendant, while walking toward his car, then said, "have a good night."  (PSMF ¶ 28; DRPSMF ¶ 28.)  Plaintiff contends that Defendant made that comment "in a very sarcastic tone."  (Pl. Aff. ¶ 21; Pl. Dep. at 18-19.)

According to Defendant, as he started back to his car, Plaintiff then yelled, "you don't talk to my girlfriend." (Lawrence Dep. at 63-64.)  Defendant testified that he then returned to Plaintiff and explained why he stopped.  (Id.) Plaintiff remained in the same place. (Id. at 64.)  Defendant

AO 72A
(Rev.8/8

testified that he understood Plaintiff to be complaining about Defendant talking to Ms. Hise.  (Id. at 65.)

According to Defendant, Plaintiff yelled out to him, "go fuck yourself."  (Lawrence Dep. II at 66-67.)   Defendant recalls that Plaintiff moved his head forward when he made that statement.  (Id. at 67-68.)

Plaintiff admits that he "blurted out words" along the lines of "okay, well, go fuck yourself."  (PSMF ¶ 29; DRPSMF ¶ 29.)  Plaintiff contends that he did not yell or shout, and he did not speak loudly. (Pl. Aff. ¶ 22.)  Plaintiff was still standing in the same place when he made that statement.  (PSMF ¶ 30; DRPSMF ¶ 30.) According to Plaintiff, he was not moving at all when he made the

statement and did not gesture or act aggressively.  (Pl. Aff. ¶ 23.)

Defendant walked back to Plaintiff and said, "Excuse me?"  (PSMF ¶ 33; DRPSMF ¶ 33; DSMF ¶ 11; PRDSMF ¶ 11.)  At that time, according to Defendant, Plaintiff and Ms. Hines were still free to go.  (PSMF ¶ 35; DRPSMF ¶ 35.)  Defendant contends that although he understood Plaintiff's words, he wanted to know if there was something else to it, and he returned to Plaintiff to explain his side of the situation and what he saw, in order to address customer service issues.  (PSMF ¶¶ 36-38; DRPSMF ¶¶ 36-38.) Defendant knows that he has an obligation not to arrest individuals simply for exercising their First Amendment rights, and also knows that officers may not retaliate against

individuals because they exercise their First Amendment rights.  (PSMF ¶¶ 65-65; DRPSMF ¶¶ 64-65.)

According to Defendant, after he returned to Plaintiff, Plaintiff said, "What are you going to do?" (Lawrence Dep. II at 73, 83-84.)  Plaintiff did not move toward Defendant. (Id. at 74.)  Defendant, however, felt that the situation might escalate after Plaintiff said, "What are you doing to do?" (Id. at 75.)  Defendant based that assessment on Plaintiff's jabbing his finger at Ms. Hise, the strong odor of alcohol on Plaintiff's breath, Plaintiff's continuous interruption, Plaintiff's yelling "you don't talk to my girlfriend," Plaintiff's yelling "go fuck yourself," Plaintiff's statement, "What are you going to do?," and Plaintiff's body language, which included his body tilting forward and his head nodding toward Defendant.

13

(<u>Id.</u> at 75-76.)  Plaintiff did not gesture with his arms.  (<u>Id.</u> at 76.)   According to Defendant, Plaintiff was agitated and upset. (<u>Id.</u> at 83.) Defendant handcuffed Plaintiff behind his back.  (<u>Id.</u> at 84.)

Plaintiff denies making the "what are you going to do" statement, contending instead that Defendant simply told him to turn around and put his hands behind his back.  (Pl. Aff. ¶¶ 25-26; Pl. Dep. at 19.)   Plaintiff did not take aggressive action while being handcuffed.  (PSMF ¶ 40; DRPSMF ¶ 40.)

According to Defendant, he walked Plaintiff toward his patrol car and asked Plaintiff to sit for officer safety reasons while he was writing out the citation for Plaintiff's arrest, and Plaintiff responded, "No." (Lawrence Dep. II at 89-91, 96,

14

100, 103, 105.)   Defendant contends that he then held Plaintiff by his arm and used a foot sweep maneuver to take Plaintiff to the ground to get Plaintiff to comply with the command.  (Id. at 31, 105.)

Plaintiff, on the other hand, contends that Defendant had not asked him to sit before Defendant took him to the ground.  (Pl. Aff. ¶ 27.)  Plaintiff contends that Defendant, without saying anything, simply put an arm around Plaintiff's chest and engaged in some type of maneuver that caused a sharp blow to Plaintiff's right knee, which took Plaintiff to the ground and caused immediate pain.  (Pl. Aff. ¶ 27; Pl. Dep. at 20, 22, 24-25.)  Before Defendant took Plaintiff to the ground, Plaintiff had not taken aggressive physical action.  (PSMF ¶¶ 42, 54; DRPSMF ¶¶ 42, 53.)

15

In any event, a second officer was on his way to transport Plaintiff at that time. (PSMF ¶ 55; DRPSMF ¶ 55.) Plaintiff contends that Defendant's maneuver tore Plaintiff's right anterior cruciate ligament ("ACL"). (Pl. Aff. ¶ 31.) Plaintiff complained that Defendant had torn his ACL. (Id. ¶ 32; Pl. Dep. at 23-24; Lawrence Dep. at 106.)

According to Plaintiff, Defendant did not tell him to take a seat until after Defendant first took Plaintiff to the ground. (Pl. Aff. ¶ 33.) Plaintiff contends that Defendant helped Plaintiff hop to Defendant's car, and that Defendant asked Plaintiff to sit down. (Pl. Aff. ¶ 33; Pl. Dep. at 20, 25.) According to Plaintiff, when Defendant told him to take a seat, he responded that he could not go to the ground because his hands were behind his back and he could not

16

put weight on his right foot. (Pl. Aff. ¶ 33; Pl. Dep. at 20-21, 24.)  Plaintiff contends that Defendant assisted him to the ground and did not use a foot sweep maneuver to get him to the ground. (Pl. Aff. ¶ 33; Pl. Dep. at 21.)

After handcuffing Plaintiff, Defendant communicated with the Atlanta Police Department's dispatch operator. (PSMF ¶ 57; DRPSMF ¶ 57.)  Defendant initially asked for a paddy wagon to come to the location. (PSMF ¶ 57; DRPSMF ¶ 57.) After Plaintiff complained about his knee, Defendant called for a Grady EMS unit to come to the scene. (PSMF ¶ 57; DRPSMF ¶ 57.)  Plaintiff refused medical treatment at the scene. (PSMF ¶ 58; DRPSMF ¶ 58.)

17

Defendant cited Plaintiff for violating City of Atlanta Code 10-9.3, Disorderly While Under the Influence. (DSMF ¶ 13; PRDSMF ¶ 13; PSMF ¶ 44; DRPSMF ¶ 44.) According to Defendant, the words for which Plaintiff was arrested included "go fuck yourself" and "what are you going to do." (PSMF ¶ 45; DRPSMF ¶ 45.) Defendant later cited Plaintiff with violating City of Atlanta Code 106-81(7), physical obstruction, allegedly as a result of Plaintiff's refusal to sit down when Defendant instructed him to sit down. (PSMF ¶¶ 47-48, 53; DRPSMF ¶¶ 47-48, 53.) Both of those criminal charges were dismissed by the Municipal Court of the City of Atlanta. (PSMF ¶ 66; DRPSMF ¶ 66.)

Before Plaintiff's arrest, he had never had knee problems. (PSMF ¶ 59; DRPSMF ¶ 59.) Further, before

AO 72A
(Rev.8/8
2)

being handcuffed, Plaintiff never had difficulty standing or walking.  (PSMF ¶ 60; DRPSMF ¶ 60.)  Plaintiff contends that following the incident, he had significant injury to his right knee, including an ACL tear.  (PSMF ¶ 61; DRPSMF ¶ 61.)  Defendant has no explanation for Plaintiff's knee injury, and denies knowledge of it.  (PSMF ¶ 63; DRPSMF ¶ 63.)

## B.  Procedural Background

Plaintiff originally filed this lawsuit in the State Court of Fulton County, Georgia.  On September 20, 2013, Plaintiff filed a First Amended Complaint that alleged Defendant had violated Plaintiff's constitutional rights.  (Notice of Removal (Docket Entry No. 1) ¶¶ 2-3.)   On October 1, 2013, Defendant removed the case to this Court, citing the Court's

federal question jurisdiction. (Id. ¶ 4.) The Clerk eventually assigned the case to Senior United States District Judge Robert L. Vining, Jr.

On March 25, 2014, Defendant filed a Motion for Summary Judgment. (Docket Entry No. 46.) On March 31, 2014, Plaintiff filed a Motion for Summary Judgment. (Docket Entry No. 55.) The briefing processes for both Motions are complete.

Judge Vining retired, and the Clerk reassigned this action to the undersigned. (Second Unnumbered Docket Entry Dated Aug. 29, 2014.) The Court finds that the Motions for Summary Judgment are ripe for resolution.

20

## II.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) authorizes summary judgment when "there is no genuine dispute as to any material fact" and "the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of showing the Court that summary judgment is appropriate and may satisfy this burden by pointing to materials in the record.  Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1313 (11th Cir. 2007).  Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by

21

coming forward with specific facts that demonstrate the existence of a genuine issue for trial.  <u>Allen</u>, 495 F.3d at 1314.

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. <u>Optimum Techs., Inc.</u>, 496 F.3d at 1241.  The Court also must "'resolve all reasonable doubts about the facts in favor of the non-movant.'" <u>Rioux v. City of Atlanta, Ga.</u>, 520 F.3d 1269, 1274 (11th Cir. 2008) (quoting <u>United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.</u>, 894 F.2d 1555, 1558 (11th Cir. 1990)).  Further, the Court may not make credibility determinations, weigh conflicting evidence to resolve disputed factual issues, or assess the quality of the

22

evidence presented. Reese, 527 F.3d at 1271; Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1140 (11th Cir. 2007). Finally, the Court does not make factual determinations. In re Celotex Corp., 487 F.3d at 1328.

The standard for a motion for summary judgment differs depending on whether the party moving for summary judgment also bears the burden of proof on the relevant issue. As the United States Court of Appeals for the Sixth Circuit has noted:

> "When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial. But where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."

Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting William W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984)). "Where the movant also bears the burden of proof on the claims at trial, it 'must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether.'" Franklin v. Montgomery County, Md., No. DKC 2005-0489, 2006 WL 2632298, at *5 (D. Md. Sept. 13, 2006) (alteration in original) (quoting Hoover Color Corp. v. Bayer Corp., 199 F.3d 160, 164 (4th Cir. 1999)).

24

## III.  Defendant's Motion for Summary Judgment

### A.  § 1983 Claims

#### 1.  Qualified Immunity

Defendant argues that qualified immunity protects him with respect to Plaintiff's § 1983 claims asserted against him in his individual capacity. (Def.'s Br. Supp. Mot. Summ. J. (Docket Entry No. 45-1) at .)  The Court first sets forth the general principles governing qualified immunity, and then applies those principles to this case.

#### a.  Qualified Immunity: In General

Qualified immunity protects government officials performing discretionary functions from suits for damages brought against them in their individual capacities.  Rioux, 520 F.3d at 1282.  The Eleventh Circuit applies a two-part

25

analysis to determine whether a defendant is entitled to qualified immunity.  <u>Crawford v. Carroll</u>, 529 F.3d 961, 977 (11th Cir. 2008).

Under the qualified immunity analysis used in this Circuit, the defendant first must prove that the allegedly unconstitutional conduct occurred while the defendant official was acting within the scope of the official's discretionary authority.  <u>Al-Amin v. Smith</u>, 511 F.3d 1317, 1324 (11th Cir. 2008).  To determine whether the defendant acted within his discretionary authority, the Court asks "whether the [defendant] was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [the defendant's] power to utilize."  <u>Holloman ex rel. Holloman v. Holland</u>, 370 F.3d

26

1252, 1265 (11th Cir. 2004). In making this determination, the Court does not inquire "'whether it was within the defendant's authority to commit the allegedly illegal act.'" Id. at 1266 (quoting Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998)). Instead, the Court must "look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." Id. Once a defendant shows that he or she acted within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate that (1) the defendant's conduct violated the plaintiff's constitutional right and (2) that the constitutional right

27

violated was "clearly established." Al-Amin, 511 F.3d at 1324. If the plaintiff fails to make either of those showings, the defendant is entitled to qualified immunity. See Smith ex rel. Smith v. Siegelman, 322 F.3d 1290, 1295 (11th Cir. 2003) ("Without a constitutional violation, there can be no violation of a clearly established right."). The Supreme Court has observed that courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

For a constitutional right to be clearly established, the contours of that right must be clear enough that reasonable

28

officials would understand that what they are doing violates that right.  <u>Rioux</u>, 520 F.3d at 1282.  To make this showing, a plaintiff need not show that the official's "conduct specifically has been held unlawful"; instead, the plaintiff simply must demonstrate that, in light of pre-existing law, the unlawfulness of the official's conduct was apparent. <u>Bates v. Harvey</u>, 518 F.3d 1233, 1248 (11th Cir. 2008).  In determining whether the unlawfulness of the official's act was apparent, the Court must ask "whether the state of the law at the time [of the official's action] gave [the official] 'fair warning' that [his or her] conduct was unconstitutional." <u>Id.</u>

The Eleventh Circuit has explained that a defendant may have received "fair warning" in one of three ways. <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1350 (11th Cir. 2002).

29

"First, conduct may be clearly established as illegal through explicit statutory or constitutional statements." <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1208-09 (11th Cir. 2007) (citing <u>Vinyard</u>, 311 F.3d at 1350).[2]   "Second, certain 'authoritative judicial decision[s]' may establish broad principles of law that are clearly applicable in a variety of factual contexts going beyond the particular circumstances of the decision that establishes the principle." <u>Id.</u> at 1209 (alteration in original) (citing <u>Vinyard</u>, 311 F.3d at 1351). "Third, and most common, is the situation where case law previously elucidated in materially similar factual

---

[2]This exception, however, "is a narrow one" and applies "only when the conduct in question is so egregious that the government actor must be aware that he [or she] is acting illegally." <u>Thomas ex rel. Thomas v. Roberts</u>, 323 F.3d 950, 955 (11th Cir. 2003).

30

circumstances clearly establishes that the conduct is unlawful." Id. (citing Vinyard, 311 F.3d at 1351-52).

### b.   Application to this Case

The Court finds that the evidence in the record establishes that Defendant acted within his discretionary authority--specifically, Defendant acted within the scope of his duties by patrolling an area, investigating possible suspicious activity, and arresting a suspect--when he engaged in the conduct that gave rise to this lawsuit. Under those circumstances, the Court finds that Defendant acted within his discretionary authority when he took the actions at issue.

31

AO 72A
(Rev.8/8

The Court next must determine whether Defendant's actions violated clearly established law. The Court examines Plaintiff's claims in turn.

### i.    Wrongful Arrest

Qualified immunity will protect Defendant as to Plaintiff's wrongful arrest claim if arguable probable cause existed for Defendant to arrest Plaintiff. Storck v. City of Coral Springs, 354 F.3d 1307, 1315 (11th Cir. 2003). "'Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.'" Id. (quoting Durruthy v. Pastor, 351 F.3d 1080, 2003 WL 22799497, at *5 (11th Cir. 1997)) (internal quotation marks omitted). "'Even law enforcement officials who reasonably

32

but mistakenly conclude that probable cause is present are entitled to immunity.'" <u>Wood v. Kesler</u>, 323 F.3d 872, 878 (11th Cir. 2003) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991)).  Moreover, qualified immunity applies so long as an officer "has 'arguable probable cause to arrest for any offense.'" <u>Merenda v. Tabor</u>, No. 12-12562, 2013 WL 396122, at *2 (11th Cir. Feb. 1, 2013) (quoting <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1257 (11th Cir. 2010)). "[T]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." <u>Merenda v. Tabor</u>, 506 F. App'x 862, 865 (11th Cir. 2013) (internal quotation marks and citation omitted) (per curiam). "So long as an officer has arguable probable cause to arrest for any

33

offense, qualified immunity will apply." Id. (internal quotation marks and citation omitted).

When determining whether probable cause exists to support an arrest, the Court considers whether the arresting officer's actions were "objectively reasonable based on the totality of the circumstances." Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004)). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Id. (internal quotation marks and citation omitted).

34

AO 72A
(Rev.8/8

"'Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction.'" Wood, 323 F.3d at 878 (quoting Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002)) (alteration in original).   The officer's subjective intent is immaterial, and the Court instead must consider the facts objectively.   Williams v. City of Homestead, Fla., 206 F. App'x 886, 888 (11th Cir. 2006) (per curiam).

Defendant argues that he had arguable probable cause to arrest Plaintiff for violating City of Atlanta Code Section

35

10-9, Disorderly while under the influence.[3]   That code

section states, in relevant part:

> It shall be unlawful for any person within the
> corporate limits of the city to be disorderly while
> under the influence on the streets, sidewalks or
> other public places.   The following acts are
> declared to be in violation of this section:
>
> . . .

---

[3]Defendant did not argue in his initial brief that he had
arguable probable cause to arrest Plaintiff for obstruction under the
City of Atlanta Code.  (See generally Def.'s Br. Supp. Mot. Summ.
J. (Docket Entry No. 46).)  To the extent that Defendant raises that
argument in his reply brief (Def.'s Reply Supp. Mot. Summ. J.
(Docket Entry No. 69), he has waived it. See In re Egidi, 571 F.3d
1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in
a party's initial brief or raised for the first time in the reply brief are
deemed waived.").  The Court consequently does not address that
Code Section.  Even if the Court addressed it, the Court would
have to deny summary judgment in Defendant's favor because the
evidence, viewed in the light most favorable to Plaintiff, indicates
that Plaintiff did not refuse to obey Defendant's command to sit
down.   Moreover, for the reasons discussed infra, a genuine
dispute remains as to whether Defendant had arguable probable
cause to arrest Plaintiff for being disorderly while under the
influence.  Under Georgia law, an individual is entitled to resist
arrest if an arrest is unlawful. Merenda, 506 F. App'x at 867.

36

(3)   Any person who, without provocation, uses to or of another, in such person's presence, fighting words, or who shall panhandle while under the influence of alcohol or drugs.

. . .

(6)   Any person who shall act in a boisterous, turbulent, or agitated manner, or who shall use profane, vulgar, loud or unbecoming language while under the influence of alcohol or other drugs while on the streets, sidewalks, or other public places within the corporate limits of the city.

City of Atlanta Code § 10-9(a).   Georgia law "no longer criminalizes the use of unprovoked language threatening an immediate breach of peace, which is obscene, vulgar, or profane, that is directed to a person older than 14 years of age, unless such language also constitutes fighting words." Meadows v. State, 303 Ga. App. 40, 42 n.9, 692 S.E.2d 708, 711 n.9 (2010).   Fighting words are "those, which as a

37

matter of common knowledge and under ordinary circumstances will, when used to or of another person in his presence, naturally tend to provoke a violent response." Bolden v. State 148 Ga. App. 315, 316, 251 S.E.2d 165, 166 (1978). "In defining fighting words in the context of disorderly conduct and resisting arrest, Georgia courts recognize that a court must examine not only the words used but also the circumstances and context in which they were said." Merenda, 506 F. App'x at 865 (internal quotation marks and citation omitted). Simply insulting an officer is not enough to arrest an individual for disorderly conduct. Id. at 866.

Viewing the evidence in the light most favorable to Plaintiff, the Court must conclude that Defendant lacked

38

probable cause to arrest Plaintiff for disorderly conduct involving fighting words. Although Plaintiff's words--go fuck yourself--were certainly insulting and obscene, Plaintiff testified that he did not yell, that he was not agitated, that he was not intoxicated, that he was not belligerent, and that he did not say to Defendant, "what are you going to do" in a defiant manner. Under those circumstances, a reasonable jury could find that Plaintiff did not use fighting words and that Defendant lacked arguable probable cause to arrest Plaintiff for being disorderly while under the influence. See Merenda, 506 F. App'x at 867 (finding that officer lacked arguable probable cause to arrest plaintiff for commenting that officer "was a 'fucking asshole,'" where plaintiff was not shouting and did not appear to be a danger

39

to anyone, and evidence viewed in light most favorable to

plaintiff indicated that no one overheard it).

Next, the Court must determine whether Plaintiff has

demonstrated that Defendant's conduct in arresting him

violated clearly established law.[4]   In this Circuit, "[i]t is

---

[4]Defendant did not move for summary judgment on Plaintiff's § 1983 First Amendment claim.  (See generally Def.'s Br. Supp. Mot. Summ. J.)   Even if Defendant had moved for summary judgment on that claim, the Court would deny the Motion.  "To establish a First Amendment claim, a plaintiff must show first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech."  Merenda, 506 F. App'x at 868 (internal quotation marks and citation omitted). Viewing the evidence in the light most favorable to Plaintiff, Plaintiff's speech "did not amount to fighting words, so that speech was protected."  Id.  Further, the evidence, viewed in the light most favorable to Plaintiff, indicates that Defendant arrested Plaintiff for saying "go fuck yourself," and there consequently is "a clear causal connection between that protected speech and the arrest."  Id. Moreover, "[i]t is clearly established that it is a violation of the First Amendment to arrest an individual based on his protected speech." Id.  Under those circumstances, Defendant would not be entitled to qualified immunity or summary judgment in his favor with respect

clearly established that an arrest made without probable cause violates the Fourth Amendment." <u>Redd v. City of Enterprise</u>, 140 F.3d 1378, 1382 (11th Cir. 1998). A genuine dispute therefore remains as to whether Defendant is entitled to qualified immunity for Plaintiff's § 1983 wrongful arrest claim, and the Court cannot grant summary judgment in Defendant's favor on this issue.

### ii.   Excessive Force

Plaintiff also asserts a § 1983 excessive force claim against Defendant.   "The Fourth Amendment's freedom from unreasonable searches and seizures also encompasses the right to be free from the use of excessive force in the course of an investigatory stop, or other

---

to Plaintiff's § 1983 First Amendment claim.

41

'seizure' of the person." Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004). When determining whether the force used to effect a seizure is reasonable for purposes of the Fourth Amendment, a court must carefully balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). In conducting this analysis, a court should determine "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Kesinger, 321 F.3d at 1248

42

(quoting Graham, 490 U.S. at 397).[5]  The court must ask whether a reasonable officer would believe that the level of force used was necessary to resolve the situation at hand. Id. at 1248 n.3.  In making that determination, the court must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

The Supreme Court has observed:

---

[5]Consequently, any alleged subjective beliefs or subjective intent on Defendant's part is irrelevant to the Fourth Amendment analysis. Jean-Baptiste v. Gutierrez, 627 F.3d 816, 822 (11th Cir. 2010).

43

The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.   The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a search warrant on the wrong premises.   With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.

As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.   An officer's evil intentions will not make a Fourth Amendment violation out of an

44

> objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Graham, 490 U.S. at 396-97 (citations omitted).

Here, the evidence, viewed in the light most favorable to Plaintiff, indicates that Defendant kicked Plaintiff in the knee with enough force to cause severe pain while Plaintiff was in handcuffs, was not resisting arrest or attempting to flee, and was not disobeying Defendant's verbal commands. Given that evidence, and given that the Court must view the evidence in the light most favorable to Plaintiff in connection with Defendant's Motion for Summary Judgment, the Court finds that a genuine dispute remains as to whether Defendant used excessive force against Plaintiff by kicking him in the knee.    See Hadley, 526 F.3d at 1330

("[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force."); see also Veitch v. Corkran, No. 2:08-CV-43-MEF, 2011 WL 739080, at *7-9 (M.D. Ala. Jan. 31, 2011) (concluding that jail officer was not entitled to qualified immunity where plaintiff alleged that officer kicked him in side after plaintiff had been handcuffed and offered no resistance to arrest).  Further, it was clearly established at the time of Plaintiff's arrest that "the 'gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force.'" Hawkins v. Carmean, 562 F. App'x 740, 744 (11th Cir. 2014) (quoting Brown v. City of Huntsville, 608 F.3d 724, 738 (11th Cir. 2010)) (per curiam).  Under those circumstances, a genuine dispute remains as to whether Defendant is entitled to

46

qualified immunity on Plaintiff's § 1983 excessive force claim, and the Court must deny Defendant's Motion for Summary Judgment on that claim.[6]

## B.   State Law Claims

Defendant argues that official immunity protects him with respect to Plaintiff's state law claims. (Br. Supp. Def.'s Mot. Summ. J. at 13-15.)[7]   The Georgia Constitution

---

[6]Even if the Court accepted as true Defendant's assertion that he simply used a foot sweep maneuver against Plaintiff, Defendant still could not obtain summary judgment based on qualified immunity because there is a genuine dispute concerning the legality of Plaintiff's arrest. See Brown, 608 F.3d at 738 ("'even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect'" (quoting Reese, 527 F.3d at 1272)).

[7]Defendant's brief in support of his Motion for Summary Judgment does not contain page numbers, as required by the Local Rules.  See N.D. Ga. R. 5.1E ("All pages shall be numbered consecutively at the bottom center of the page.").  The Court directs counsel to comply with the Local Rules for all future filings.

AO 72A
(Rev.8/8
2)

provides, in relevant part, that State officers and employees "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § II, ¶ IX(d). Thus, "'[a] suit against a public officer acting in his or her official capacity will be barred by official immunity unless the public officer (1) negligently performed a ministerial duty, or (2) acted with actual malice or an actual intent to cause injury while performing a discretionary duty.'" Tant v. Purdue, 278 Ga. App. 666, 668, 629 S.E.2d 551, 553 (2006) (quoting Wanless v. Tatum, 244 Ga. App. 882, 882, 536 S.E.2d 308, 309 (2000)).

"In the context of official immunity, 'actual malice' means a deliberate intent to do wrong." Reed v. DeKalb

48

Cnty., 264 Ga. App. 83, 86, 589 S.E.2d 584, 587 (2003) (citing Merrow v. Hawkins, 266 Ga. 390, 392, 467 S.E.2d 336, 337 (1996)).   Proof of ill will, standing alone, is insufficient to establish actual malice.   Adams v. Hazelwood, 271 Ga. 414, 415, 520 S.E.2d 896, 898 (1999). Instead, "in the context of official immunity, actual malice means a deliberate intention to do a wrongful act." Id. at 415, 520 S.E.2d at 898.  "Such act may be accomplished with or without ill will and whether or not injury was intended." Id., id.

Here, Defendant was performing a discretionary act when he arrested Plaintiff.  See Taylor v. Waldo, 309 Ga. App. 108, 110, 709 S.E.2d 278, 281 ("[M]aking a warrantless arrest is a discretionary act."); Selvy v.

Morrison, 292 Ga. App. 702, 704, 665 S.E.2d 401, 405 (2008) ("The making of a warrantless arrest for conduct occurring in an officer's presence is a discretionary act that will not give rise to personal liability unless the officer acted with actual malice or actual intent to cause injury."); Reed, 264 Ga. App. at 86, 589 S.E.2d at 587 ("[T]he decision to effectuate a warrantless arrest generally is a discretionary act requiring personal judgment and deliberation on the part of the officer.").

As discussed supra Part III.A., the evidence, viewed in the light most favorable to Plaintiff, indicates that Defendant used excessive force against Plaintiff when he arrested Plaintiff, and that Defendant lacked probable cause to arrest Plaintiff. Specifically, Plaintiff's evidence indicates that

50

AO 72A
(Rev.8/8

Defendant arrested Plaintiff without probable cause and, after Plaintiff was in handcuffs and while Plaintiff was complying with Defendant's commands, struck Plaintiff's knee with sufficient force to tear Plaintiff's ACL. Under those circumstances, Plaintiff's evidence is sufficient to create a genuine dispute concerning whether Defendant acted with actual malice. See Hayes v. Flowers, No. 1:13-CV-25 (WLS), 2014 WL 3534147, at *7 (M.D. Ga. July 16, 2014) ("[T]he Court finds that [defendant's] arrest of [plaintiff], under the facts and circumstances presented, if believed by the trier of fact, involved a total lack of probable cause. As such, malice may be inferred and [defendant] is not entitled to official immunity under Georgia law."); Barnes v. DeKalb Cnty., Ga., 898 F. Supp. 1317, 1323-24 (N.D. Ga.

AO 72A
(Rev.8/8
2)

Sept. 24, 2012) ("If plaintiff's version of the events is true, a jury would be authorized to find that plaintiff's arrest was the result of actual malice, because the arrest was totally without probable cause and motivated by plaintiff's refusal to cooperate."); Richardson v. Johnson, No. 4:08-CV-91(CDL), 2010 WL 2600699, at *7 (M.D. Ga. June 23, 2010) (denying summary judgment on state law claims based on official immunity where evidence indicated that defendant punched unresisting plaintiff in face); Chandler v. Cronic, Civil Action No. 2:08-CV-0154-RWS, 2009 WL 3158181, at *8 (N.D. Ga. Sept. 23, 2009) (finding that genuine dispute remained as to actual malice where evidence indicated that defendant's use of Taser against plaintiff amounted to unlawful and excessive contact);

52

<u>Cipriani v. Fulton Cnty.</u>, Civil Action No. 1:07-CV-0069-CAP, 2008 WL 7070790, at *8 (N.D. Ga. Nov. 18, 2008) (concluding that evidence was sufficient to allow jury to determine that defendant acted with actual malice, where evidence indicated that deputy hogtied and beat plaintiff, despite lack of resistance or provocation); <u>Gardner v. Rogers</u>, 224 Ga. App. 165, 169, 480 S.E.2d 217, 221 (1996) (holding defendant police officer was not entitled to official immunity where evidence was sufficient to allow jury to conclude that defendant committed battery against plaintiff).

For the reasons discussed above, a genuine dispute remains as to whether Defendant acted with actual malice. The Court consequently cannot grant summary judgment to

AO 72A

(Rev.8/8

2)

Defendant on Plaintiff's state law claims based on official

immunity.[8]

---

[8]Defendant's initial brief did not address the merits of Plaintiff's state law claims. (See generally Br. Supp. Def.'s Mot. Summ. J.) To the extent that Defendant argues in his reply that Plaintiff's state law claims fail on their merits, Defendant waived those arguments by failing to assert them in his initial brief. In re Egidi, 571 F.3d at 1163. In any event, viewing the evidence in the light most favorable to Plaintiff, Plaintiff presented sufficient evidence to support his assault and battery claims against Defendant, as well as his false imprisonment claim. See Smith v. Holeman, 212 Ga. App. 158, 160, 441 S.E.2d 487, 490-91 (1994) (finding that false imprisonment and assault and battery claims should have survived summary judgment because of dispute concerning whether plaintiff's arrest was lawful, and observing that even in case of lawful arrest, "officer may not use more force than is reasonably necessary in the circumstances").

## IV.   Plaintiff's Motion for Summary Judgment[9]

Plaintiff filed a Motion for Summary Judgment, arguing that Defendant clearly lacked probable cause to arrest him, that Defendant violated his First Amendment rights, and that Defendant used excessive force against Plaintiff. To grant summary judgment in Plaintiff's favor on those issues, however, the Court would have to find that no reasonable juror could do other than find for Plaintiff on the issues. For the following reasons, the Court cannot do so.

### A.   § 1983 Wrongful Arrest

---

[9]Plaintiff did not move for summary judgment on his state law claims. (See Pl.'s Br. Supp. Mot. Summ. J. (Docket Entry No. 55-1) (indicating that Plaintiff seeks "partial summary judgment on liability as to his federal First Amendment and Fourth Amendment wrongful arrest claims").

55

The evidence, viewed in the light most favorable to Defendant, indicates that Plaintiff yelled "go fuck yourself" at Defendant, that Plaintiff appeared agitated and angry, that Plaintiff was clearly intoxicated, and that Plaintiff stated to Defendant, in a defiant manner, "what are you going to do." Under those circumstances, a genuine dispute remains as to whether Plaintiff's speech amounted to fighting words. Consequently, a genuine dispute also remains as to whether Defendant had arguable probable cause to arrest Plaintiff for violating Code Section 10-9, Disorderly under the influence. If Defendant had arguable probable cause to arrest Plaintiff, then qualified immunity would protect Defendant as to this claim. The Court

AO 72A
(Rev.8/8

therefore cannot grant summary judgment in Plaintiff's favor on his § 1983 wrongful arrest claim.

## B.   § 1983 First Amendment

For the reasons discussed <u>supra</u> Part IV.A., the evidence, viewed in the light most favorable to Defendant, indicates that Defendant had arguable probable cause to arrest Plaintiff.  If Defendant had arguable probable cause to arrest Plaintiff, he would be entitled to qualified immunity on Plaintiff's § 1983 First Amendment claim.  <u>See</u> <u>Merenda</u>, 506 F. App'x at 868 n.5 ("If Tabor had probable cause to arrest Merenda, he would be entitled to qualified immunity on both the Fourth Amendment and First Amendment claims."); <u>Redd</u>, 140 F.3d at 1383 ("When a police officer has probable cause to believe that a person is committing

57

a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested.").   The Court therefore cannot grant summary judgment in Plaintiff's favor on this claim.

## C.   § 1983 Excessive Force

Further, the evidence, viewed in the light most favorable to Defendant, indicates that Defendant did not kick Plaintiff in the knee.  Rather, Defendant's version of the evidence indicates that Defendant simply used a foot sweep maneuver to take Plaintiff to the ground, and that he did so only after Plaintiff refused to obey his verbal command to sit down. Further, taking as true Defendant's testimony that he simply used a foot sweep against Plaintiff, a reasonable jury could find that the force used was <u>de minimis</u>.  <u>See Myers</u>

58

v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) ("Because a police officer is entitled to use some force to arrest a suspect, the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." (internal quotation marks and citation omitted)).    A foot sweep, standing alone, is de minimis force.   See id. (finding force used was de minimis and lawful where officer grabbed plaintiff by the arm, forced him to the ground, placed him in handcuffs, and searched him); Marshall v. West, 559 F. Supp. 2d 1224, 1244 (M.D. Ala. June 2, 2008) (finding that foot sweep used to subdue plaintiff who resisted commands to get on the ground was de minimis force).    The Court therefore cannot grant

59

summary judgment in Plaintiff's favor on his § 1983 excessive force claim.

## D.  Summary

In sum, viewing the evidence in the light most favorable to Defendant, genuine disputes remain as to all of Plaintiff's § 1983 claims.   The Court cannot conclude that a reasonable jury would be required to find for Plaintiff on the claims, and it consequently denies Plaintiff's Motion for Summary Judgment.

## V.  Conclusion

ACCORDINGLY, the Court **DENIES** Defendant's Motion for Summary Judgment [46] and **DENIES** Plaintiff's Motion for Summary Judgment [55].  The Court **ORDERS** the Parties to submit their proposed consolidated pretrial

AO 72A
(Rev.8/8
2)

order **WITHIN THIRTY (30) DAYS AFTER THE DATE OF**

**THIS ORDER**.

IT IS SO ORDERED, this the 19 day of September,

2014.

_____
UNITED STATES DISTRICT JUDGE

61